MANLY TAYLOR, ADMINISTRATOR OF WILLIS TAYLOR. DECEASED, v. ROW-
LAND LUMBER COMPANY.

(Filed 12 October, 1927.)

1. **Negligence—Master and Servant—Employer and Employee—Evidence —Speculation—Verdict—Reversal—Railroads—Tramroads.**

   Where evidence tends only to show that the plaintiff's intestate was employed as a fireman on the defendant lumber company's tramway steam locomotive hauling cross-ties on flat cars attached, loaded in the customary manner, and was seen immediately before the injury on the ground in front of the slowly backing train too late to stop the train that killed him, and there is no evidence of defects in equipment or in the conduct of the defendant's other employees operating the train that would tend to show any negligence on the defendant's part: *Held,* the evidence as to defendant's negligence is too uncertain, vague, speculative and remote to sustain a verdict of damages in the plaintiff's favor.

2. **Same—Violation of Employer's Rule for Safety.**

   Where the evidence only tends to show that the defendant company's engineer on its tram locomotive came to his death by reason alone of his violating a rule of the company adhered to by the defendant not to jump from a running train, it is insufficient to take the case to the jury, there being no further evidence of the defendant's negligence in causing the death.

CIVIL ACTION, before *Cranmer, J.,* at Spring Term, 1927, of JONES.

The evidence tended to show that the plaintiff, a young colored man about 22 years old, was employed as fireman on a tram-road engine owned by the defendant. It was his duty to throw the switch. The engine and one car coupled to it, loaded with cross-ties, had pulled up on a spur-track to let another train pass. After the train passed the engine and car of cross-ties were backed out of the spur-track, and it became necessary for plaintiff's intestate to throw the switch.

Witness for plaintiff testified: "I told Willie Taylor to shift out, him and the engineer, and to let the other train go by, and they let the other train go by, and when they went by he got off for something, and when I saw him he was on his hands and knees. I didn't see him when

he got off. Some of them said he jumped down ahead of it, and the train was running by and he fell. I saw him when he raised up, and the drawhead of the car hit him in the back and the sand bolster run over him. It was on a side-track, a switch from the main line. . . . I saw him on his hands and knees, and I saw a sand bolster run over him. The train was backing at that time. The back car had a few ties on it; they were loaded crossways of the car. . . . I don't know how high the ties were. I don't think they were very high. We didn't have but eight rails on the car at the time, and that would not take many ties. . . . The train was going about three or four miles an hour when he was killed. . . . The ties were not as high as we ordinarily have them, and they had no effect on his being hurt. . . . The cross-ties were loaded all right. When I first saw the boy he was on his hands and knees just off the car, and the car was on him so quick that nobody could do anything. We flagged the train as quick as we could, but the bumper struck him as soon as he fell off. . . . It was my instruction that nobody should get off those cars while the engine was moving, and Willie Taylor knew it. . . . It was against orders for a man to get on or off a car in motion. Willie Taylor had been working there two or three months, and he took orders and instructions from me."

Another witness for plaintiff testified: "I can't say I saw him killed, because I didn't see him fall off, and neither did I see him because I was working. When I saw him, I said, 'Lord have mercy,' and I jumped out there and said: 'The ties is piled so high the engineer couldn't see that man.' . . . The car dragged the body about four feet before it stopped. . . . When I first saw Willie the car was right on him. The engine stopped in about four feet, which was just as quick as it could possibly have stopped. The ties were not piled up any higher than usual. . . . It was against the orders of Mr. Everton for us to get on or off the train while it was moving, and everybody had those orders."

This was substantially all the evidence for plaintiff.

The issues and answers of the jury thereto were as follows:

1. Was the plaintiff's intestate, at the time of his injury, employed and working for Geo. L. Everton? A. Yes.

2. Was the said Geo. L. Everton an independent contractor, as alleged in the answer? A. No.

3. Was the plaintiff's intestate killed by the negligence of the defendant, as alleged? A. Yes.

4. Was the plaintiff's intestate guilty of contributory negligence, as alleged in the answer? A. No.

5. What damage, if any, is the plaintiff entitled to recover of the defendant? A. $750.

From judgment upon the verdict the defendant appealed.

*Sutton & Greene for plaintiff.*
*Moore & Dunn for defendant.*

BROGDEN, J. The evidence of the plaintiff does not disclose how the killing of plaintiff's intestate occurred. Only two theories arise from plaintiff's evidence as to what happened:

First, that the plaintiff's intestate fell from the rear of a backing train upon the track; second, that plaintiff's intestate jumped from the rear of the backing train to the track, stumbled, fell, and was run over by the train. There is no proof whatever that there was any defect in the appliance used at the time, causing plaintiff's intestate to fall, nor is there any proof of any negligent movement or jerking of the train which precipitated him therefrom. The evidence, therefore, cannot support the first theory. Upon the other hand, if plaintiff's intestate, in the discharge of his duty, jumped from the moving train upon the track and lost his balance, then the undisputed evidence discloses that he did so in plain and express violation of orders and instructions given him by his superiors.

There is a suggestion that the cross-ties were piled too high on the car from which plaintiff's intestate jumped or fell, but the evidence further discloses that the cross-ties were not piled higher than usual. In any event plaintiff's intestate was first seen in the center of the track. where it would be impossible for the engineer to have discovered his perilous situation.

In the final analysis, the evidence presents mere speculation and no more. "The rule is well settled that if there be no evidence or if the evidence be so slight as not reasonably to warrant the inference of the fact in issue, or furnish more than material for mere conjecture, the court will not leave the issue to be passed on by the jury." *Seagrove v. Winston,* 167 N. C., 207; *S. v. Martin,* 191 N. C., 404. Referring to this rule in *Poovey v. Sugar Co.,* 191 N. C., 722, this Court says: "This rule is both just and sound. Any other interpretation of the law would unloose a jury to wander aimlessly in the fields of speculation."

We hold therefore that the motion for nonsuit, duly made by the defendant, should have been allowed.

Reversed.